Randolph et al. v. Washington-Virginia Railway Co. et al.

*Geoffrey S. Smith* and *Dickson, Beitler & McCouch*, for plaintiffs.

*William A. Schnader*, Attorney General, and *Edward F. Hitchcock*, Special Deputy Attorney General, for Commonwealth.

*Charles Myers* and *Barnes, Biddle & Morris*, for garnishee.

STERN, P. J., April 7, 1931.—The question involved in the plaintiffs' rule for judgment for want of sufficient answer to interrogatories is whether the fund on deposit at the Girard Trust Company escheated to the Commonwealth of Pennsylvania, but it is agreed by counsel that that question depends in turn upon whether the deposit by the railway company established a trust fund for the benefit of the coupon-holders, or whether it represented nothing more than the ordinary relation existing between a depositor and a bank.

The authorities in Pennsylvania governing the question involved are meagre. Bank of the United States *v.* Macalester, 9 Pa. 475, which is cited by counsel for the Commonwealth, is understandable upon the ground that, as appears from the statement of facts in the report of that case, the fund was deposited at the bank under an agreement by the latter to pay it to the coupon-holders. It was, therefore, naturally held that the bank could not claim this fund on account of an indebtedness owed to it by the depositor. Counsel for the garnishee cites Austin-Nichols & Co., Inc., *v.*, Union Trust Co., 289 Pa. 341, where it appears that the money was deposited with a trustee having active duties to perform in regard to the fund, and the fact was clear that the depositary occupied a trust position. It is stated in that case that:

"Whether a fund is to be treated as held in trust for a special purpose, or considered merely as a deposit, creating the relation of debtor and creditor, depends on the circumstances of each particular case."

It then proceeds to cite with approval certain New York authorities laying down rules to determine whether or not a deposit should be treated as a trust fund.

A study of the New York cases thus cited reveals what, in our opinion, is the proper rule to be applied. These cases hold that ordinarily the mere fact that the deposit is stated to be for a specific purpose, as, for example, to pay interest due on coupons, does not constitute the depositary a trustee nor impress the money with a trust inuring to the benefit of the coupon-holders, but that its only effect is to constitute the depositary the agent of the depositor to distribute the moneys as directed, and that by virtue of the authority which the depositor had to give the directions he has authority to revoke them and to demand the return of the money before it is actually used for the purpose specified. The case is different only where the depositary expressly accepts a trust obligation with respect to the deposit or enters into a specific agreement to use the money to pay the designated beneficiaries: Staten Island Cricket and Baseball Club *v.* Farmers Loan and Trust Co., 41 App. Div. (N. Y.) 321; Noyes *v.* First National Bank of New York, 180 App. Div. (N. Y.) 162; Erb *v.* Banco di Napoli, 243 N. Y. 45.

The most comprehensive discussion of the entire subject is to be found in the case of In re Interborough Consolidated Corporation, 288 Fed. 334 (Circuit Court of Appeals, Second Circuit). This case holds, as do the others cited, that if bonds or coupons are made payable at a particular bank and at a particular time, and funds are left with the bank to be applied in payment of the bonds or coupons, such funds are held by the bank as the agent of the

obligor and not as the agent of the obligees. It is pointed out that a mere direction by a party to his agent to apply certain funds to the payment of a debt does not operate as an equitable assignment of such funds, and that such direction until acted upon may be revoked. Such a deposit, without some act of appropriation by the agent depositary, does not create any privity of contract as between such agent and the holder of the debt. It is true that ordinarily if a person receives money to be paid to another or to be applied to a particular purpose, he becomes a trustee to make such payment or application of the fund, but that is because the fund comes into his possession and control, and, therefore, he is bound by his acceptance of the money to apply it accordingly. The situation, however, is different with a bank deposit; the bank assumes no obligation to the beneficiary, but merely an obligation under its contract with its depositor to make payments out of the fund as directed by the depositor and as the latter's agent until and unless contrary instructions are received from the depositor. In short, in the present case the coupon-holders would have had no right of action against the Girard Trust Company to compel it to turn over the funds to them. Moreover, if, let us say, the Girard Trust Company had become bankrupt before paying out the money to the coupon-holders, the loss would have fallen upon the railway company and not upon the coupon-holders. Under the authorities cited, as well as by reason and analysis, it would appear clear that the Girard Trust Company was merely the fiscal agent of the railway company to pay the coupon-holders out of the railway company's account, but that no trust fund was created giving the coupon-holders any vested right in it as such.

It may be added that the New York cases also indicate that it makes no difference whether the money is paid out directly by the depositary or on checks of the depositor, or whether or not the deposit is put by the bank into a special account; therefore, there is nothing in the supplemental answer of the garnishee which changes the general principles applicable to the subject.

For these reasons, the court makes the plaintiffs' rule for judgment absolute, and adjudges that there is in the hands of the garnishee as the property of the defendant herein, and subject to the plaintiffs' attachment, the sum of $2425, from which is to be deducted garnishee's attorney fee and cost of affidavit of $13.50.