Arkell & Douglas, Inc., Appellant, v. N. H. Borenstein & Sons, Inc., Respondent.

First Department, May 29, 1919.

Sale — breach of superseding contract — basis of damage — defenses — existence of war — unavoidable contingencies — loss of prospective profits.

Where a contract of sale of personal property has been superseded by a later contract, damages for a breach of contract must be based entirely on the breach of the superseding contract.

It is no defense to a breach of a contract for the sale of personal property which is made contingent upon war, that war existed in the country from which the goods were to be imported at the time of the breach, where a state of war existed therein when the contract was made.

Where the performance of a contract of sale is made subject to contingencies unavoidable or beyond the control of the vendor, the burden rests on him to show that failure to perform was actually caused by conditions over which he had no control and which resulted from causes set forth in the contract.

Where loss of prospective profits is relied on as special damages for the breach of a contract for the purchase of hats, and it appears that the breach relied on is that of a superseding contract, evidence of orders for hats which were to be supplied under the original contract cannot be relied on to support the claim for a breach of the superseding contract where it does not appear that the customers had agreed to take the grade of hats to be furnished under the superseding contract.

APPEAL by the plaintiff, Arkell & Douglas, Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 21st day of June, 1917, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 15th day of June, 1917, denying plaintiff's motion for a new trial made upon the minutes.

*Edmund L. Mooney* of counsel [*Charles Blandy* and *Frederick A. Card* with him on the brief; *Blandy, Mooney & Shipman,* attorneys], for the appellant.

*Max D. Steuer* of counsel [*Theodor Megaarden* with him on the brief], for the respondent.

MERRELL, J.:

This action is brought to recover the sum of $6,172.50, being the purchase price of a quantity of straw hats and hemp braids sold to the defendant by the plaintiff. The answer does not deny the allegations of the complaint, but sets up two counterclaims for damages for the alleged breach by the plaintiff of several contracts for the sale of straw hats to the defendant. There being no contest in respect to plaintiff's claim, the trial was devoted entirely to the consideration of the defendant's counterclaims. At the close of the trial a verdict was directed in favor of the defendant for the sum of $15,269.83, which is the difference between the damages claimed by the defendant and the sum conceded to be due plaintiff. Altogether six separate contracts are set forth in defendant's answer. Three of these contracts were made on August 4, 1915, and are set forth in the second counterclaim. The other three are the contracts of August 9 and 30, 1915, and December 10, 1915, and are set forth in the first counterclaim.

In the August fourth contracts the plaintiff agreed to deliver to the defendant 1,700 dozen Leghorn hats of a stated quality at $5.75 per dozen, to be delivered in equal shipments in November and December, 1915, and January, 1916. Of these hats only thirty dozen were actually delivered and the defendant has been allowed damages under its second counterclaim for the sum of $6,262.50, being $3.75 on each of the 1,670 dozen hats which plaintiff failed to deliver.

The two contracts of August 9 and 30, 1915, for 1,000 dozen and 4,000 dozen Leghorn hats, respectively, set forth as aforesaid in defendant's first counterclaim, provide for the delivery to the defendant by the plaintiff of said 5,000 dozen hats of a stated quality at the agreed price of four dollars per dozen. After setting forth these two contracts, the answer alleges that after these contracts were made the plaintiff told defendant that it could not deliver the hats described therein, but could deliver a hat of another quality, known as Monghidoro, at three dollars and seventy-five cents per dozen, and that in November, 1915, it was agreed that the plaintiff should deliver to the defendant 5,000 dozen of these hats, " on condition that the defendant

would accept the said mechandise at the said price, subject to same discount, in lieu of the deliveries to be made under the contracts of August 9 and 30, 1915, and that the said contracts were to be regarded as satisfied and performed upon complete performance by the plaintiff." Not only did defendant claim in its answer that the contracts of August ninth and thirtieth were not to be regarded as superseded by the November contract (otherwise known as the December tenth contract) unless the plaintiff fully performed the latter, but the whole trial was conducted on that theory. Not until the evidence had been closed did counsel for the defendant concede that the August ninth and thirtieth contracts had actually been superseded by the December contract.

In addition to the damages allowed, as above stated, on the second counterclaim, the trial court has found that the defendant is entitled to the sum of $15,737.83 as damages under its first counterclaim. As the contracts of August ninth and thirtieth were conceded to have been superseded by the December agreement, the defendant's claim for damages must be based entirely on the breach of the last-mentioned contract. The aforesaid sum of $15,737.83 allowed by the court was made up of two items, as follows: $11,885, being special damages claimed to be due the defendant for loss of prospective profits on 3,458⅓ dozen of the Leghorn hats, which defendant says he has contracted to sell, and $3,852.83, general damages arising from plaintiff's failure to deliver 1,541⅔ dozen of said hats.

The six contracts in question are all in writing and each contain the following stipulation: " This contract is contingent upon strikes, floods, riots, war, rebellion and all other contingencies unavoidable or beyond our control."

The hats in question are of a kind and quality usually manufactured in Italy and were to be furnished plaintiff by the Italian firm of Tullio Santini & Figli, who were engaged in the hat business at Florence. The plaintiff alleged in its reply, and contended on the trial, that it was impossible to furnish these hats owing to conditions which obtained in Italy at the time the deliveries were to be made, and which conditions were the direct result of the war with Austria in which Italy was then engaged. This is plaintiff's principal defense to both of the defendant's counterclaims.

War between Italy and Austria was declared on May 25, 1915, several months prior to the execution of any of the aforesaid contracts, and it is, therefore, apparent that the mere fact that a state of war existed would be no defense.   The burden clearly rested on the plaintiff to show that it was actually prevented from performing its contracts by conditions over which it had no control and which resulted from the causes set forth in the contracts.   While there is some evidence tending to show that the conditions obtaining in Italy at the time made the manufacture of the hats in question difficult, such evidence is not sufficient to sustain the burden cast upon the plaintiff.   The plaintiff, however, claims that the evidence of one Steinberg on this subject was improperly excluded by the court, and that had such evidence been admitted there would have been sufficient evidence to sustain plaintiff's defense.   Whether or not the court erred in excluding this evidence it is not necessary at this time to determine.   At best the testimony of Steinberg would be of little weight owing to his very slight qualifications to testify upon the subject.   As, however, a new trial is to be granted for the reasons hereafter stated, the plaintiff will have ample opportunity to prove the facts.

As above stated, the trial court has awarded large damages to the defendant on its two counterclaims.   In so doing the court adopted the defendant's theory in respect to the proofs offered and has based these damages under the first counterclaim wholly on evidence respecting the breach of the contracts of August ninth and thirtieth, which contracts were superseded by that of December tenth.

The evidence offered in respect to damages under this counterclaim is entirely confined to the value of the hats described in the August contracts.   The witnesses were interrogated in respect to the market value of Exhibits 2 and 3, which were concededly the sample hats to be furnished under the contracts of August ninth and thirtieth.   The hats to be furnished under the December contract were of an inferior grade, and there is no evidence in the case which would warrant the court in assessing the damages for failure to deliver hats under the last-mentioned contract.

APP. DIV.—VOL. CLXXXVIII.      11

When making his motion for a directed verdict, defendant's counsel stated to the court that the general damages claimed by defendant under the first counterclaim were two dollars and fifty cents per dozen, and that such sum was the difference between the contract price and the lowest market price given in the testimony.   As the testimony *was devoted exclusively to proof respecting the value of the hats under the August contracts,* the court clearly erred in adopting defendant's figures respecting general damages.   It is quite apparent that the two dollars and fifty cents is the difference between six dollars and fifty cents, one of the values stated by defendant's witnesses, and the sum of four dollars, being the price per dozen of the hats as set forth in the August contracts.

The court also erred in directing a verdict for special damages for loss of prospective profits.

As above stated, the defendant claims that it agreed to sell 3,458⅓ dozen of the hats in question to customers; and that the plaintiff was informed of that fact when the contract of December tenth was made.   It appears, however, from the testimony that all of the hats claimed to have been so sold by defendant were hats of the quality described in the contracts of August ninth and thirtieth.   The defendant claims that its representative told plaintiff at the time the November agreement was made that it had made contracts for the sale of hats of the quality described in the August contracts, and that defendant could use the hats to be furnished under the new contract to supply such customers.   Such statement, however, is no proof that defendant had interviewed its customers on this subject and that they had agreed to take 3,458⅓ dozen of these hats which are conceded to be to an inferior quality.   There was, therefore, no adequate foundation for the award of special damages.

The plaintiff further contends that there is no legal evidence of any damage whatever.   While the evidence is very unsatisfactory, it may be that the condition of the market at the time was such that proof of market value was extremely difficult.   While the defendant should be required to prove its case by showing the various elements of its damages claimed to have been suffered by it by the best evidence obtainable, we hesitate to say that the defendant introduced no legal

evidence of general damages under the second counterclaim. It is not, however, necessary to pass upon this question at this time, as additional proof may be offered on the next trial. Nor is it necessary to consider the question as to whether or not the proofs required the submission of any question. to the jury.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.